ORIGINAL

1  John J. Rice (SBN 140865)
   BALLARD SPAHR LLP
2  655 West Broadway, Suite 1600
   San Diego, California 92101-8494
3  Tel.:  (619) 696-9200
   Fax:  (619) 696-9269
4  Email:  ricej@ballardspahr.com

5  Peter E. Gelhaar (*pro hac vice pending*)
   Brendan St. Amant (*pro hac vice pending*)
6  DONNELLY, CONROY & GELHAAR, LLP
   260 Franklin Street, Suite 1600
7  Boston, MA 02110
   Tel.:  (617) 720-2880
8  Fax:  (617) 720-3554
   Email:  peg@dcglaw.com
9          bts@dcglaw.com



FILED

DEC 1 1 2014

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

SEALED

10  Attorneys for Plaintiff Millennium Health, LLC

11          **UNITED STATES DISTRICT COURT**

12          **SOUTHERN DISTRICT OF CALIFORNIA**

13

14  AMERITOX, LTD. and MARSHFIELD     Case No. ___14CV 2928 WQH WVG___
15  CLINIC,
                                       **[FILED UNDER SEAL]**
16          Plaintiffs,
                                       **NON-PARTY RENEE T. BRYAN'S**
17          v.                         **MOTION TO QUASH SUBPOENA**

18  MILLENNIUM HEALTH, LLC,            Pending in the
                                       United States District Court
19          Defendant.                 Western District of Wisconsin
                                       Case No. 3:13-cv-00832-WMC
20

21

22

23

24

25

26

27

28

1    Non-party Renee T. Bryan hereby moves this Court, pursuant to Rule

2    45(d)(3) of the Federal Rules of Civil Procedure, to quash Ameritox, Ltd.'s

3    ("Ameritox") subpoena for her deposition ("Subpoena") in a patent infringement

4    suit, which issued from the United States District Court for the Western District of

5    Wisconsin.[1]

6    In support of her motion, Ms. Bryan represents that, weighing Ameritox's

7    claimed need for her *third day* of deposition testimony against the enormous

8    burden upon her, the court should exercise its discretion to quash the subpoena as

9    untimely, cumulative, duplicative, and unduly burdensome.  Fed. R. Civ. P.

10   26(b)(2)(C), 45(d)(3).

11   In further support hereof, Ms. Bryan respectfully refers the Court to the

12   accompanying Memorandum in Support of Motion to Quash Deposition Subpoena,

13   the Declaration of Renee T. Bryan, and the Declaration of Peter E. Gelhaar with

14   exhibits attached thereto, all filed concurrently with this Motion.

16   Dated:  December 11, 2014          Respectfully submitted,

18                                      By: _____
                                            John J. Rice
19                                          ricej@ballardspahr.com
                                            Ballard Spahr LLP
20
                                                and
21
                                            Peter E. Gelhaar (*pro hac vice pending*)
22                                          peg@dcglaw.com
                                            Brendan St. Amant (*pro hac vice pending*)
23                                          bts@dcglaw.com
                                            Donnelly, Conroy & Gelhaar, LLP
24
                                            Attorneys for Plaintiff
25                                          Millennium Health, LLC

---

[1]    A copy of the Subpoena is attached to the Declaration of Peter E. Gelhaar
       ("Gelhaar Decl.") as Exhibit A.

John J. Rice (SBN 140865)
BALLARD SPAHR LLP
655 West Broadway, Suite 1600
San Diego, California 92101-8494
Tel.:  (619) 696-9200
Fax:  (619) 696-9269
Email:  ricej@ballardspahr.com

Peter E. Gelhaar (*pro hac vice pending*)
Brendan St. Amant (*pro hac vice pending*)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, MA 02110
Tel.:  (617) 720-2880
Fax:  (617) 720-3554
Email:  peg@dcglaw.com
          bts@dcglaw.com

Attorneys for Plaintiff Millennium Health, LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMERITOX, LTD. and MARSHFIELD CLINIC,<br><br>             Plaintiffs,<br><br>      v.<br><br>MILLENNIUM HEALTH, LLC,<br><br>             Defendant. | Case No. _____<br><br>**[FILED UNDER SEAL]**<br><br>**NON-PARTY RENEE T. BRYAN'S MEMORANDUM IN SUPPORT OF HER MOTION TO QUASH DEPOSITION SUBPOENA**<br><br>Pending in the<br>United States District Court<br>Western District of Wisconsin<br>Case No. 3:13-cv-00832-WMC |

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ......................................... 3

I.    MILLENNIUM, AMERITOX, THE INSTANT PATENT INFRINGEMENT ACTION, AND THE RELATED CASE ...................... 3

II.   MS. BRYAN'S PERSONAL AND PROFESSIONAL BACKGROUND ............................................................................... 5

III.  MS. BRYAN'S PRIOR DEPOSITION TESTIMONY ................................ 6

IV.  THE PROPOSED DECEMBER 2014 DEPOSITION OF MS. BRYAN ................................................................................. 9

LEGAL STANDARD ....................................................................................... 10

ARGUMENT ..................................................................................................... 12

I.    MS. BRYAN'S PROPOSED TESTIMONY IS DUPLICATIVE OF HER PREVIOUS DEPOSITION TESTIMONY AND THAT OF OTHER DEPONENTS WHO ARE CURRENT MILLENNIUM EMPLOYEES ......................................................................... 12

II.   SUBJECTNG MS. BRYAN TO A THIRD DAY OF DEPOSITION TESTIMONY WOULD BE A SEPARATE, UNDUE BURDEN ON HER THAT OUTWEIGHS ANY LITIGATION "BENEFIT" THAT AMERITOX MIGHT DERIVE AT THIS STAGE OF THE CASE. ...... 17

CONCLUSION .................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*
    244 F.3d 189 (1st Cir. 2001) .............................................................................. 11

*Ameritox v. Millennium*
    1:12cv1753 (D. Md. filed Jun. 14, 2012) ............................................................. 3

*Ameritox v. Millennium*
    3:11:cv00866 (S.D. Cal. filed Apr. 22, 2011) ...................................................... 3

*Ameritox v. Millennium*
    8:11cv00775 (M.D. Fla. filed Apr. 8, 2011) .................................................... 3, 20

*Ameritox v. Millennium*
    8:12cv00219 (M.D. Fla. filed Feb. 1, 2012) ........................................................ 3

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
    300 F.R.D. 406 (C.D. Cal. 2014) ....................................................................... 19

*Anderson v. Abercrombie & Fitch Stores, Inc.*
    No. 06cv991-WQH (BLM), 2007 WL 1994059 (S.D. Cal. Jul. 2, 2007).... 12, 17

*Bank of America Corp. v. Centrify Corp.*
    No. 3:11-MC-135-RJC-DCK, 2011 WL 5127741 (W.D.N.C. Oct. 28,
    2011) .................................................................................................................. 16

*Buckhorn, Inc. v. Orbis, Inc.*
    No. 10–MC–71, 2010 WL 4941726 (E.D. Wis. Nov. 30, 2010) ........................ 16

*Dart Indus. Co. v. Westwood Chem. Co.*
    649 F.2d 646 (9th Cir. 1980)......................................................................... 10, 11

*Dibel v. Jenny Craig, Inc.*
    Civil No. 06cv2533 BEN(AJB), 2007 WL 2220987, at *2 (S.D. Cal.
    Aug. 1, 2007)...................................................................................................... 12

*DR Sys., Inc. v. Eastman Kodak Co.*
    No. 09CV1625-H(BLM), 2009 WL 2982821 (S.D. Cal. Sept. 14, 2009)......... 15

*High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*
    161 F.R.D. 86 (N.D. Cal. 1995) ......................................................................... 11

*In the Matter of Subpoenas To Wisconsin Energy Corporation*
  No. 10-MC-7, 2010 WL 715429 (E.D.Wis. Fed. 24, 2010) .............................. 11

*In re Subpoena of DJO, LLC*
  295 F.R.D. 494 (S.D. Cal. 2014) .......................................................................... 11

*Marrese v. American Academy of Orthopedic Surgeons*
  726 F.2d 1150 (7th Cir. 1984) (en banc) ............................................................. 10

*Millennium Laboratories, Inc. v. Ameritox, Ltd.*
  Civil Action No. 1:10-cv-3327 (D. Md.) ............................................................... 4

*Millennium v. Ameritox*
  1:10cv03327 (D. Md. filed Nov. 24, 2010) ............................................................ 3

*Millennium v. Ameritox*
  1:13-cv-11727 (D. Mass. filed Jul. 17, 2013) ........................................................ 3

*Millennium v. Ameritox*
  3:12-cv-01002 (S.D. Cal. filed Apr. 23, 2012) ....................................................... 3

*Millennium v. Ameritox*
  3:12-cv-01063 (S.D. Cal. filed Apr. 30, 2012) ....................................................... 3

*Mirebeau of Geneva Lake LLC v. City of Lake Geneva*
  No. 08–CV–693, 2009 WL 3347101 (E.D. Wis. Oct. 15, 2009) ........................ 10

*Moon v. SCP Pool Corp.*
  232 F.R.D. 633 (C.D. Cal. 2005) ......................................................................... 11

*Rankine v. Roller Bearing Co. of Am.*, No. 12CV2065-IEG BLM, 2013 WL
  3992963, at *3 (S.D. Cal. Aug. 5, 2013) .............................................................. 19

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(2)(C) ................................................................................. 10, 12

Fed. R. Civ. P. 45(d)(3) ............................................................................... 1, 10, 17

NON-PARTY BRYAN'S MEMO. ISO HER MOTION TO QUASH DEPOSITION SUBPOENA

## **INTRODUCTION**

Non-party Renee T. Bryan hereby files this memorandum in support of her Motion, pursuant to Rule 45(d)(3) of the Federal Rules of Civil Procedure, to quash Ameritox, Ltd.'s ("Ameritox") subpoena for her deposition ("Subpoena"), which issued from the United States District Court for the Western District of Wisconsin.[1]

The underlying civil action is a patent infringement action between two fierce competitors – Ameritox and Millennium – that have previously sued each other at least eight times in various venues. Ms. Bryan was formerly employed at Millennium, but left its employ in 2011. Ms. Bryan now finds herself in the middle of a shooting match in which she has absolutely no interest, financial or otherwise, in the outcome. Instead, she is just another deponent in yet another action between two unrelenting business rivals. Simply put, if ever there were a situation that cries out for Rule 45 relief from an unduly burdensome deposition subpoena, this is it:

- Ameritox has already deposed Ms. Bryan for *two days* in 2011 – once while she was employed by Millennium in May 2011, and once after she separated from Millennium in November 2011.

- The second day of Ms. Bryan's testimony occurred almost six months *after* Ameritox commenced the instant patent infringement action.

- During the second day of Ms. Bryan's deposition testimony, she provided over *fifty pages* of testimony to Ameritox concerning precisely the same issues on which Ameritox now seeks to depose her again for a *third* day.

- In the instant patent infringement action, Ameritox has already deposed two other current Millennium employees – both of whom are

---

[1] A true and correct copy of the Subpoena is attached to the Declaration of Peter E. Gelhaar ("Gelhaar Decl.") as Exhibit A.

NON-PARTY BRYAN'S MEMO. ISO HER MOTION TO QUASH DEPOSITION SUBPOENA

1                  Ph.Ds. – for a total of *three days* concerning the *same* subject matter

2                  on which Ameritox now seeks to depose Ms. Bryan, who is a former

3                  employee.  Both of these individuals also have previously been

4                  deposed by Ameritox in a related matter and their deposition

5                  transcripts were filed on the docket in the instant case.

6      •   Ameritox seeks to depose Ms. Bryan long after the case facts have

7                  crystalized, as evidenced by the fact that Ameritox has already

8                  opposed Millennium's motion for summary judgment and did not

9                  depose Ms. Bryan prior to the filing of its opposition to Millennium's

10                dispositive motion.

11     •   Ms. Bryan is a single head-of-household who, after nine months of

12                unemployment, recently started a new job as a marketing director in a

13                three-person math tutoring start-up.

14     •   Finally, Ms. Bryan is presently devoting a substantial amount of her

15                time and energy to: (1) supporting her mother and caring for her

16                mother's financial affairs after the recent death of Ms. Bryan's father;

17                and (2) being "on-call" for her brother who is engaging in

18                chemotherapy for recently-diagnosed gastric cancer.

19        Rule 45 makes clear that a District Court: (1) may limit discovery that is

20    unreasonably cumulative, duplicative, or amply available from other deponents

21    (like here); and (2) must be especially mindful of the burdens of discovery imposed

22    on non-parties (like here).  For all of the reasons set forth below, Ms. Bryan

23    respectfully requests that the Court quash her deposition subpoena.

24    ///

25    ///

26    ///

27    ///

28    ///

1

2

3

## FACTUAL AND PROCEDURAL BACKGROUND

## I.   MILLENNIUM, AMERITOX, THE INSTANT PATENT INFRINGEMENT ACTION, AND THE RELATED CASE

4       Ameritox and Millennium are fierce and unrelenting competitors in the urine

5   drug testing industry.  The parties have been engaged in an ongoing battle in the

6   courts for almost five years, pulling seemingly everyone in their orbit into the

7   process.[2]  The instant patent infringement action that is the subject of this motion is

8   currently pending in the United States District Court for the Western District of

9   Wisconsin.  The following facts have been taken from documents filed in that

10   case.[3]

11       As part of Millennium's drug testing services, Millennium has provided its

12   testing results to customers in a report called the Rapid Assessment of Drug

13   Adherence Report (the "RADAR Report").  *See* Dkt. No. 149 ("Declaration of

14   Diane Hancock ("Hancock Decl.")) ¶ 6 (Gelhaar Decl., Ex. D); Dkt. No. 142

15   ("Sample RADAR Report") (Gelhaar Decl., Ex. E).  The RADAR Report provides

16   information about the medications or drugs (or their metabolites) found in a

17   particular patient's urine as well as the amount of such medication, drug, or

18   metabolite.  Id.  Thus, the report can show when a medication or drug that has not

19   been prescribed to the patient is nonetheless found in the patient's urine and/or

20

21

---

22   [2]   *See, e.g., Millennium v. Ameritox*, 1:10cv03327 (D. Md. filed Nov. 24, 2010); *Ameritox v. Millennium*, 8:11cv00775 (M.D. Fla. filed Apr. 8, 2011);

23   *Ameritox v. Millennium*, 3:11:cv00866 (S.D. Cal. filed Apr. 22, 2011); *Ameritox v. Millennium*, 8:12cv00219 (M.D. Fla. filed Feb. 1, 2012);

24   *Millennium v. Ameritox*, 3:12-cv-01002 (S.D. Cal. filed Apr. 23, 2012); *Millennium v. Ameritox*, 3:12-cv-01063 (S.D. Cal. filed Apr. 30, 2012);

25   *Ameritox v. Millennium*, 1:12cv1753 (D. Md. filed Jun. 14, 2012); *Millennium v. Ameritox*, 1:13-cv-11727 (D. Mass. filed Jul. 17, 2013).

26   [3]   A true and correct copy of the Docket Entries (hereafter "Dkt.") of *Ameritox*

27   *v. Millennium*, 3:13-cv-00832-WMC is attached to the Gelhaar Declaration as Exhibit B.  A true and correct copy of the Amended Complaint in this

28   action is also attached to the Gelhaar Declaration as Exhibit C.

---

NON-PARTY BRYAN'S MEMO. ISO HER MOTION TO QUASH DEPOSITION SUBPOENA

1  whether illicit drugs are found in the urine. *See* Dkt. No. 189 ("Proposed Findings

2  No. 31 in Support of Millennium's Motion for Summary Judgment").

3      The instant patent infringement action arose out of a prior lawsuit previously

4  brought by Millennium against Ameritox in 2010, in which Ameritox ultimately

5  was found to have falsely advertised its services. *See* Dkt. Nos. 129-6, 129-10, and

6  129-11 (Verdict and Court Orders from *Millennium Laboratories, Inc. v. Ameritox,*

7  *Ltd.*, Civil Action No. 1:10-cv-3327 (D. Md.))(the "Related Case"). It appears

8  from the docket of the Related Case that Ameritox initially sought to bring its

9  patent infringement claims now at issue in the instant case as counterclaims in the

10  Related Case. When that attempt was rejected, however, Ameritox decided to

11  separately initiate the instant patent infringement action. The instant action was

12  commenced on June 23, 2011. *See* Dkt. No. 43 in Related Case ("Correspondence

13  re: notification of filing") (attached to the Gelhaar Declaration as Exhibit F.[4]

14      According to the Amended Complaint, Ameritox filed the instant patent

15  infringement action against Millennium on two related patents-in-suit, U.S. Patent

16  No. 7,585,680 ("the '680 patent") and U.S. Patent No. 7,785,895 ("the '895

17  patent"). Both patents-in-suit claim methods for monitoring drug usage based on

18  the drug or drug metabolites (*viz.*, the by-products of ingested drugs that have been

19  metabolized by the body) found in a patient's biological sample. Generally, the

20  asserted claims of the patents-in-suit disclose a series of six steps that culminate in

21  a final comparison step between the drug collected from a patient's urine sample to

22  "known normative data" collected from a patient population. At its core, Ameritox

23  accuses Millennium of infringing just one part of Millennium's RADAR Report,

24  which is a graphical section that reflects "Comparative Results" and "Historical

25

26  [4] The instant case was transferred from the District of Maryland to the
    Western District of Wisconsin in November 2013, apparently so that the
27  latter Court could exercise personal jurisdiction over co-plaintiff Marshfield
    Clinic and add it as a party to this case. *See* Dkt. No. 85 ("Memorandum
28  and Order").

1 Results" (together, the "Graphed Results"). Importantly, Millennium did not even
2 begin to offer the Graphed Results on its RADAR Report until June 2011, which
3 was a month before Ms. Bryan left Millennium. *See* Declaration of Renee T.
4 Bryan ("Bryan Decl.") at ¶ 8; Gelhaar Decl., Ex. D (Hancock Decl.) at ¶ 8.

5 **II.     MS. BRYAN'S PERSONAL AND PROFESSIONAL BACKGROUND**

6        Ms. Bryan has been a resident of San Diego for the last six years and has
7 worked in the field of marketing for the last twenty years. Bryan Decl. at ¶ 2.
8 Unlike the two current Millennium employees who have already been deposed in
9 the instant case concerning the Graphed Results displayed on Millennium's
10 RADAR Report (*see infra*), Ms. Bryan is neither a scientist nor a Ph.D. *Id.* at ¶ 3.
11 From March 2009 to July 2011, Ms. Bryan was employed by Millennium as its
12 marketing Vice President. *Id.* During that time, her principal responsibilities were
13 focused on Millennium's marketing and public relations efforts. *Id.* Since Ms.
14 Bryan separated from Millennium on July 20, 2011, she has had no role at
15 Millennium. *Id.* at ¶ 4. Moreover, she owns no stock or any other financial
16 interest in Millennium whatsoever. *Id.*[5]

17        Since she gave the second of her two prior depositions over three years ago,
18 Ms. Bryan's life has changed significantly. A few months ago, Ms. Bryan's father
19 passed away, which left her 79 year-old mother widowed, living alone in Florida.
20 *Id.* at ¶ 9. Because her father took care of all of the finances for her mother, Ms.
21 Bryan has been in constant contact with estate lawyers, accountants and financial
22 advisors to manage her mother's financial affairs. *Id.* She has traveled extensively
23 to Florida to assist with this process, and speaks with her mother frequently every
24 week. *Id.* To better attend to her mother, Ms. Bryan is currently searching for an
25 apartment for her in the San Diego area. *Id.* at ¶ 10.

26

27   [5]   Ms. Bryan *does* expect that Millennium will pay her reasonable legal fees in
28         connection with this motion and, indeed, believes she is entitled to have her
              fees paid for under applicable law.

1  Making Ms. Bryan's personal burdens even heavier is the fact that her
2  brother, who resides in Oregon, has been diagnosed with gastric cancer and is in
3  chemotherapy fighting for his life. *Id.* at ¶ 11. Because she is the closest family
4  member to her brother, she is constantly "on-call" should the need arise to travel to
5  see him. *Id.*

6  Finally, while navigating these significant personal challenges, Ms. Bryan,
7  who supports herself, has also very recently secured a position as Chief Marketing
8  Officer for Boost Academy, Inc. ("Boost") after several months of unemployment.
9  Boost, a San Diego-based three-person start-up that provides math tutoring to kids
10  through a proprietary app, is expanding rapidly and requires Ms. Bryan's dedicated
11  attention – *i.e.*, 13-hour work days – to help the company (and her employment)
12  survive and stay ahead of a dynamic market-shifting environment. *Id. at* ¶ 13.
13  Simply stated, after a lengthy period of unemployment, Ms. Bryan cannot afford to
14  jeopardize her single source of income preparing for and engaging in a third day of
15  deposition. *Id.* at ¶ 14.

16  **III.   MS. BRYAN'S PRIOR DEPOSITION TESTIMONY**

17  Prior to Millennium's introduction of the Graphed Results in its RADAR
18  Report in June 2011, Ms. Bryan sat for a day-long deposition by Ameritox on May
19  26, 2011 in the Related Case. Ameritox's counsel for Ms. Bryan's May 2011
20  deposition appears to be the same counsel as Ameritox's counsel for the instant
21  patent infringement case. Thereafter, on July 20, 2011, a month after Millennium
22  began offering the Graphed Results on its RADAR Report and less than a month
23  after Ameritox filed the instant patent infringement action, Ms. Bryan's
24  employment with Millennium ended. *See* Bryan Decl. at ¶ 8.

25  Nearly six months later and clearly *after* the instant patent infringement case
26  was filed on June 23, 2011, Ameritox deposed Ms. Bryan for a *second* day on
27  November 9, 2011. *See* Dkt. No. 181 ("November 2011 Deposition of Renee
28  Bryan") (attached to the Gelhaar Declaration as Exhibit G).

Importantly, counsel for Ameritox spent a significant portion of Ms. Bryan's November 2011 Deposition discussing the RADAR Report.  Indeed, counsel for Ameritox elicited testimony from Ms. Bryan amounting to more than *50 pages* regarding the design and development of, and the training related to, the RADAR Report, *after* the instant patent infringement case concerning the RADAR Report had been filed.  *See, e.g.*, Gelhaar Decl., Exhibit G (Bryan Dep. 234-284, 287-291). This testimony is expressly available for use in the instant case by virtue of a Stipulation among the parties.  *See note 6 infra*.  What follows is only a partial list of questions that counsel for Ameritox asked Ms. Bryan concerning her knowledge of the Graphed Results of the RADAR Report:

- Can you explain, what is a RADAR report?  234:7;
- How long has Millennium used the RADAR report?  234:13;
- Has the RADAR Report been the same the entire time you have worked at Millennium?  234:18-19;
- How has the report changed?  234:21;
- [W]hy did Millennium change the RADAR report? What's your understanding?  252:7-8;
- Do you know approximately how many times the RADAR report changed during your time at Millennium?  234:25-235:1;
- Do you know approximately when Millennium began using the RADAR report?  237:4-5;
- How was Millennium communicating . . . test results to doctors prior to this new RADAR report?  238:3-5;
- Was Millennium's marketing message, until October 2010, that the RADAR report is a summary snapshot . . . of a patient's adherence to their prescribed medication plan?; 243:20-23;
- [W]hy are you sending these [RADAR deposition exhibit references] to Millennium sales reps? 249:7-8;

- Did you participate in meetings to help develop the June 2011 sample RADAR report? 259:5-6;
- About when did this group you just described start meeting to discuss the development of the June 2011 sample RADAR report?  260:4-6;
- Where did the idea come from to create and develop the June 2011 sample RADAR report? 261:7-9;
- Why did Millennium choose to include the bell curve in the 'Comparative Results' section of the June 2011 sample RADAR report?  252:13-15;
- When did you receive a mockup of the new June 2011 sample RADAR report?  258:6-7;
- Isn't it true that Millennium wanted a report that looked more like the Ameritox report with the bell curve?  254:6-8;
- [W]as this new feature on the RADAR report, the comparative results and the historical results, a significant improvement?  256:13-15;
- Whose idea was it for Millennium to add the comparative results and historical results to the June 2011 sample RADAR report?  262: 4-6;
- Is it your testimony that the graphed results, the new features added to the June 2011 sample RADAR report, are not part of the RADAR report?  282:18-20;
- How did Millennium educate the sales force on the new features contained in the RADAR report?  264: 5-6;
- Do you know whether Millennium sales representatives have participated in conference calls to receive training on Millennium's June 2011 sample RADAR report?  266:10-13;
- [W]hat's your understanding of the training that Millennium's sales representatives received with regard to the June 2011 sample RADAR report?  269: 7-9;

- Do Millennium's sales representatives use the June 2011 sample RADAR report to advertise Millennium's services to prospective customers?  271: 17-19;

- As the head of marketing at Millennium, did you intend that the June 2011 sample RADAR report compete directly with . . . Ameritox's new report based upon the <u>Marshfield</u> technology?  253:24-254:2 (emphasis added);

- Isn't it true, Ms. Bryan, that the Millennium sales force used the June 2011 sample RADAR report to try to win Ameritox accounts?  275:6-8;

- [W]as the June 2011 sample RADAR report one of the tools that sales reps would use when trying to win accounts away from Ameritox?  284:8-10.

Counsel for Ameritox also spent time questioning Ms. Bryan regarding multiple documents and communications related to the design and development of, and the training related to, the RADAR Report. *See id.*

## IV.  THE PROPOSED DECEMBER 2014 DEPOSITION OF MS. BRYAN

Now, over three years after the November 2011 Deposition was taken, Ms. Bryan has been served with yet *another* Ameritox deposition subpoena (returnable on December 16, 2014), wherein the same Ameritox counsel who deposed Ms. Bryan in November 2011 now seek to re-depose her on the same RADAR Report topics.  In recent correspondence among counsel, Ameritox's counsel has asserted that his reason for wanting to depose non-party Ms. Bryan for a *third* day is that Millennium has provided certain "new" "documents and communications" in the instant patent infringement action concerning Ms. Bryan's involvement in the creation of the Graphed Results. Gelhaar Decl. at ¶¶ 3-4.  Ameritox's counsel at first refused to provide *even one document* to the undersigned counsel in support of his assertion that the allegedly "new" documents were the driving force behind his

1  need to subject Ms. Bryan to a third day of deposition. *Id.* at ¶ 3.  When

2  undersigned counsel insisted that access to the "new" documents and

3  communications was necessary to assess Ameritox's request for Ms. Bryan's

4  deposition, Ameritox's counsel dumped nearly 4,000 documents and emails on

5  undersigned counsel, consisting of "all documents to, from, or copying Ms. Bryan

6  that have been produced to Ameritox," *id.* at ¶ 9, including roughly 3,200

7  documents produced in the prior Related Case during which Ms. Bryan was

8  deposed twice. *Id.*

9  ## LEGAL STANDARD

10       Federal Rule of Civil Procedure 45 governs the quashing of subpoenas.  A

11  court is required to quash a subpoena where it subjects a person to undue burden.

12  Fed. R. Civ. P. 45(d)(3)(A)(iv).  Furthermore, a District Court may limit any

13  discovery that is "unreasonably cumulative or duplicative, or is obtainable from

14  some other source that is more convenient, less burdensome, or less expensive; [or]

15  the party seeking discovery has had ample opportunity to obtain the

16  information . . . or . . . the burden or expense of the proposed discovery outweighs

17  its likely benefit . . . ."  Fed. R. Civ. P. 26(b)(2)(C).

18       When addressing a motion to quash a subpoena, the court must balance the

19  interest served by demanding compliance with the subpoena against the interests

20  furthered by quashing it.  *Mirebeau of Geneva Lake LLC v. City of Lake Geneva,*

21  No. 08–CV–693, 2009 WL 3347101, at *4 (E.D. Wis. Oct. 15, 2009) (citation

22  omitted).  That is, the court must compare "the hardship to the party [or person]

23  against whom discovery is sought, if discovery is allowed, with the hardship to the

24  party seeking discovery if discovery is denied."  *Marrese v. American Academy of*

25  *Orthopedic Surgeons,* 726 F.2d 1150, 1159 (7th Cir. 1984) (en banc).

26       "[T]he word 'non-party' serves as a constant reminder of the reasons for the

27  limitations that characterize 'third-party' discovery."  *Dart Indus. Co. v. Westwood*

28  *Chem. Co.,* 649 F.2d 646, 649 (9th Cir. 1980) (citations omitted).  Non-parties

NON-PARTY BRYAN'S MEMO. ISO HER MOTION TO QUASH DEPOSITION SUBPOENA

1 | deserve extra protection from the courts. *High Tech Medical Instrumentation, Inc.*
2 | *v. New Image Industries, Inc.,* 161 F.R.D. 86, 88 (N.D. Cal. 1995) (awarding
3 | sanctions against party who failed to avoid burden to non-party), *citing U.S. v.*
4 | *C.B.S.,* 666 F.2d 364, 371–72 (9th Cir. 1982); *In the Matter of Subpoenas To*
5 | *Wisconsin Energy Corporation*, No. 10-MC-7, 2010 WL 715429, at *1 (E.D.Wis.
6 | Fed. 24, 2010) (non-parties "are entitled to greater protection in the discovery
7 | process than parties in the litigation.").

8 |      In determining whether a subpoena poses an undue burden, courts "weigh
9 | the burden to the subpoenaed party against the value of the information to the
10 | serving party." *In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D. Cal.
11 | 2014) (citation omitted). "[C]ourts have incorporated relevance as a factor when
12 | determining motions to quash a subpoena." *Moon v. SCP Pool Corp.,* 232 F.R.D.
13 | 633, 637 (C.D. Cal. 2005) (*citing Goodyear Tire & Rubber Co. v. Kirk's Tire &*
14 | *Auto Servicenter,* 211 F.R.D. 658, 662 (D. Kan. 2003)). *See also Dart Industries,*
15 | 649 F.2d at 649 ("While discovery is a valuable right and should not be
16 | unnecessarily restricted, the 'necessary' restriction may be broader when a
17 | nonparty is the target of discovery").

18 |      Depositions are considered unreasonably duplicative, and accordingly an
19 | undue burden, when the deposition will produce no new information that has not
20 | already been gleaned from previous depositions. *See, e.g., Ameristar Jet Charter,*
21 | *Inc. v. Signal Composites, Inc.,* 244 F.3d 189, 193 (1st Cir. 2001) (affirming the
22 | quashing deposition subpoenas where "[defendant] has not shown that the
23 | information sought from [the deponents] would be anything but cumulative or
24 | duplicative."). Further, there is ample authority in the Ninth Circuit for the
25 | proposition that a party is required to seek information from *parties* before
26 | burdening *non-parties*. *Moon,* 232 F.R.D. at 638 (quashing non-party subpoena
27 | when the "requests all pertain to defendant, who is a party, and, thus, plaintiffs can
28 | more easily and inexpensively obtain the documents from defendant, rather than

1  from the nonparty"); *Dibel v. Jenny Craig, Inc.,* Civil No. 06cv2533 BEN(AJB),

2  2007 WL 2220987, at *2 (S.D. Cal. Aug. 1, 2007) (granting motion to quash third

3  party subpoena because request for documents were "duplicative and overly

4  burdensome" when the requested documents were available from defendants);

5  *Anderson v. Abercrombie & Fitch Stores, Inc.,* No. 06cv991-WQH (BLM), 2007

6  WL 1994059, at *1 (S.D. Cal. Jul. 2, 2007) ("District courts also have broad

7  discretion to limit discovery.  For example, a court may limit the scope of any

8  discovery method if it determines that the discovery sought is 'unreasonably

9  cumulative or duplicative, or is obtainable from some other source that is more

10  convenient, less burdensome, or less expensive.'") (citing Fed. R. Civ. P.

11  26(b)(2)(C)).

## ARGUMENT

13  **I.     MS. BRYAN'S PROPOSED TESTIMONY IS DUPLICATIVE OF
       HER PREVIOUS DEPOSITION TESTIMONY AND THAT OF**

14  **OTHER DEPONENTS WHO ARE CURRENT MILLENNIUM
       EMPLOYEES**

15       The testimony that Ameritox now seeks from Ms. Bryan is both duplicative

16  of the testimony that she gave in her November 2011 Deposition, and of the

17  testimony given by current Millennium employees.  Consequently, Ameritox

18  should be barred from obtaining her testimony. A district court must limit any

19  discovery that is "unreasonably . . . *duplicative* . . . [or when] the party seeking

20  discovery has had *ample opportunity* to obtain the information." Fed. R. Civ. P.

21  26(b)(2)(C) (emphases added).  Here, Ameritox's further deposition of Ms. Bryan

22  would be "duplicative," and Ameritox has had "ample opportunity," both in the

23  Related Case and in the many years since this case was filed in 2011, to depose

24  her. Ameritox seeks to take a *third* day of testimony from Ms. Bryan, and a second

25  day since her departure from Millennium, to ask her again about the design and

26  development of the RADAR Report.

As described in detail above, Ms. Bryan has already provided *50 pages* of deposition testimony on the development and roll-out of the RADAR Report. She testified as to when Millennium first developed the RADAR Report; how it was "beta-tested;" how it was changed; how the Graphed Results came into being; how it came to be that Millennium inserted a bell curve; how RADAR was marketed to doctors and how the messaging changed to reflect that it could not be used to predict patient adherence to their prescribed medication plan; what documents were provided to doctors to help them interpret changes in the format of a RADAR Report from one version to the next; the number of meetings, participants in meetings, and types of meetings (development and sales representative training) related to the June 2011 sample RADAR report; specific instances where the RADAR report was used by sales representatives to win an Ameritox account; and Millennium's apparent decision not to prepare associated written materials related to the new June 2011 RADAR report. *See* Gelhaar Decl., Exhibit G (Bryan Dep.) at 234-284, 287-291.[6]

In the face of this 50-page record, the undersigned counsel asked Ameritox's counsel for the reason why he wanted to depose Ms. Bryan for a third day. Gelhaar Decl. at ¶ 3. Ameritox's counsel represented that there were two reasons: (1) Millennium had produced "new" documentation in the instant case; and (2) Millennium had designated Ms. Bryan in an interrogatory answer as being "knowledgeable" of the Graphed Results of the RADAR Report. *Id.* In fact, neither reason justifies deposing Ms. Bryan again.

First, the reason based on the existence of allegedly "new" documents is clearly pretextual. After learning of this reason, undersigned counsel asked

---

[6] There can be no concern that Ms. Bryan's prior deposition testimony on the RADAR Report cannot be used in the instant patent infringement action, because the Docket reveals a Stipulation among the parties that allows such testimony to be used in the instant case. Dkt. No. 37 ("Stipulation and Agreed to Order Regarding Discovery").

1  Ameritox's counsel to identify the "new" documents so that undersigned counsel

2  could thoughtfully consider whether a third day is in fact reasonable, or whether to

3  seek relief. *Id.* at ¶¶ 3,5. At first, Ameritox's counsel refused to identify any such

4  documents at all.[7] Thereafter, when pressed, Ameritox's counsel unloaded 4,000

5  documents on undersigned counsel, leaving the undersigned counsel to find the

6  proverbial "needle(s) in the haystack." *Id.* at ¶ 9. Ameritox's counsel's

7  unwillingness to identify any specific, allegedly "new" documents on which he

8  bases his request to depose Ms. Bryan for a third day leads inescapably to the

9  conclusion that this "reason" is utterly pretextual.

10      Ameritox's counsel's second reason for wanting to depose Ms. Bryan - -

11  based on Millennium's designation of Ms. Bryan as being "knowledgeable" of the

12  Graphed Results of the RADAR Report - - is equally specious. Early in the instant

13  case, Ameritox propounded an interrogatory asking Millennium to designate "the

14  five persons most knowledgeable regarding ... the facts and circumstances

15  surrounding the design and development of Millennium's Rapid Assessment of

16  Drug Adherence Report (R.A.D.A.R.)...." *See* Gelhaar Decl., Exhibit H

17  (Objections and Responses of Millennium Laboratories, Inc. to Ameritox, Ltd.'s

18  First Set of Interrogatories) at 7-8. In January 2012, Millennium designated the

19   

---

7      Ameritox's counsel relied in part on a Stipulated Protective Order for not
disclosing any allegedly "new" documents for the undersigned counsel to
consider, asserting that the Stipulated Protective Order prohibited him from
doing so. Gelhaar Decl. at ¶ 6. However, the Stipulated Protective Order
explicitly provides that deponents and their counsel may review documents
designated as "confidential" in connection with the deposition process. The
subject provision states as follows:

"Disclosure by the receiving party of any information and materials
designated . . . under this Order is limited to . . . (v). . . any
*indicated author or recipient of the information* designated as
"CONFIDENTIAL" or "CONFIDENTIAL HEALTH
INFORMATION"; (vi) persons testifying in depositions or court
proceedings (including, without limitation, *persons preparing to
testify in such depositions* or court proceedings) and their counsel to
the extent the information designated as "CONFIDENTIAL" or
"CONFIDENTIAL HEALTH INFORMATION" was authored by,
addressed to, or received by the person testifying . . . .") (emphasis
added). *See* Dkt. No. 109 ("Stipulated Protective Order") at ¶ 10.

     14

following persons as "knowledgeable:" "Dr. Charles Mikel, Dr. Jennifer Strickland, Renee Bryan, and Kathy Egan City." *Id.* Notwithstanding this January 2012 designation, Ameritox did nothing to depose Ms. Bryan for almost *three years*. In contrast, however, Ameritox deposed current Millennium employee Dr. Charles Mikel, a Ph. D., on March 23, 2012. *See* Dkt. No. 23 ("Deposition of Charles Mikel, Ph.D. taken on March 23, 2012"). Ameritox thereafter deposed Mr. Mikel *again* recently on October 15, 2014. *See* Dkt. No. 157 ("Deposition of Charles Mikel taken on 10/15/14"). Counting Dr. Mikel's deposition that was taken in the Related Case on November 8, 2011 and has been filed on the docket for use in the instant case (Dkt. No. 120), Ameritox has already deposed the person "knowledgable" about the RADAR Report *three times*.

Moreover, Ameritox also subjected Dr. Strickland, another current Millennium employee and Ph. D., to *two* days of deposition testimony. She was deposed by Ameritox on July 8, 2011 in the Related Case and again recently on October 22, 2014. *See* Dkt. No. 119 ("Deposition of Jennifer Strickland taken on July 8, 2011") and Dkt. No. 158 ("Deposition of Jennifer Strickland taken on October 22, 2014"). Although the five total days of testimony of Dr. Mikel and Dr. Strickland are confidential and cannot be accessed from the docket, given the focused issues in this litigation, it is apparent that Ameritox has *exhaustively* covered the "facts and circumstances surrounding the design and development" of the RADAR Report with these two current Millennium/Ph.D. employees. *See DR Sys., Inc. v. Eastman Kodak Co.*, No. 09CV1625-H(BLM), 2009 WL 2982821, at *4 (S.D. Cal. Sept. 14, 2009) (quashing deposition subpoena where it would be cumulative of other discovery). [8]

---

[8] Dr. Mikel and Dr. Strickland are indeed both current Millennium employees. *See* Biography of Charles Mikel, "Millennium," *available at* http://www .millenniumresearch institute.org/team/charles-mikel; Biography of Jennifer Strickland, "Millennium," *available at* http://www.millennium researchinstitute.org/team/jennifer-strickland-pharmd-bcps.

1    And this is to say nothing of the fact that, at this stage of the proceedings,

2    the case facts have been well-developed, as evidenced by the fact that Ameritox

3    did not depose Ms. Bryan prior to opposing Millennium's motion for summary

4    judgment in the instant case. *See* Gelhaar Decl., Exhibit B (Docket) at Dkt. No.

5    172.

6    Thus, neither the "new documents" reason, nor the "knowledgeable person"

7    reason justifies the taking of Ms. Bryan's deposition. Ameritox already has

8    received *encyclopedic* testimony from two current Millennium Ph.D. employees

9    concerning the RADAR Report, in addition to the 50 pages of testimony on the

10    RADAR Report already received from Ms. Bryan.

11    Under these circumstances, Ameritox cannot make the requisite showing

12    that it cannot obtain from Millennium's current employees what it allegedly wants

13    from the non-party Ms. Bryan. Consequently, Ms. Bryan's deposition subpoena

14    should be quashed. *See, e.g., Buckhorn, Inc. v. Orbis, Inc.*, No. 10–MC–71, 2010

15    WL 4941726, at *1 (E.D. Wis. Nov. 30, 2010) (granting motion to **quash**

16    **subpoena** served on a non-party and former CEO of the accused infringer since the

17    patentee failed to show why the sought-after discovery about failed acquisitions

18    was relevant or that the information could not be obtained from current employees

19    of the accused infringer; also noting potential deponent's subjective view of

20    potential patent liability, or his knowledge about other agreements, would not be

21    relevant to the questions of infringement); *Bank of America Corp. v. Centrify*

22    *Corp.*, No. 3:11-MC-135-RJC-DCK, 2011 WL 5127741, at *2-3 (W.D.N.C. Oct.

23    28, 2011) (granting motion to **quash** deposition **subpoena** served on a nonparty

24    corporate customer who purchased certain software from an accused infringer

25    involved in a patent infringement action where the **subpoena** sought testimony as

26    to the corporation's decision to purchase and use the software, the court finding

27    that the party seeking discovery failed to show how the requested discovery was

28

1  "clearly relevant" to the infringement suit and why it could not obtain the

2  requested information from the accused infringer).

3  **II.    SUBJECTNG MS. BRYAN TO A THIRD DAY OF DEPOSITION
   TESTIMONY WOULD BE A SEPARATE, UNDUE BURDEN ON
4  HER THAT OUTWEIGHS ANY LITIGATION "BENEFIT" THAT
   AMERITOX MIGHT DERIVE AT THIS STAGE OF THE CASE.**

5

6       The cumulative and duplicative nature of Ms. Bryan's further deposition is,

7  alone, legally sufficient to quash Ameritox's subpoena. *Anderson,* 2007 WL

8  1994059, at *1.  Yet Rule 45 provides an additional, independent basis to quash a

9  subpoena by requiring that the subpoena be quashed if it "subjects a person to

10 undue burden." *See* Fed. R. Civ. P. 45(d)(3)(A)(iv).  Whether a subpoena subjects

11 a non-party witness to undue burden generally raises a question of the subpoena's

12 reasonableness, which "requires a court to balance the interests served by

13 demanding compliance with the subpoena against the interests furthered by

14 quashing it." 9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE

15 AND PROCEDURE § 2463 (2d ed. 1995).  "[T]his balance of the subpoena's benefits

16 and burdens calls upon the court to consider whether the information is necessary

17 and unavailable from any other source." *Id.*  Balancing Ameritox's alleged need

18 for a third day of Ms. Bryan's deposition testimony against the burdens of a third

19 day to her weighs demonstrably in favor of quashing the subpoena.

20       Ameritox cannot show any need for Ms. Bryan's testimony.  Ameritox

21 already deposed Ms. Bryan in November 2011 for 50-pages' worth of testimony on

22 the case's key issues *after* the instant case was filed in July 2011.  There is no basis

23 for requiring Ms. Bryan, *three years later*, to testify regarding the same subject

24 matter.  Ms. Bryan's testimony in November 2011 was given proximate to the

25 events that led to the instant litigation (occurring primarily in June 2011) and Ms.

26 Bryan's memory of those events will not have become sharper with the passage of

27 time.  Further, Ameritox has already taken *five days* of deposition testimony from

28 two current and "knowledgeable" Millennium employees on the key issues of the

1  case. There simply can be *no* argument here that Ms. Bryan is the sole repository

2  of the information Ameritox seeks. Finally, Ameritox has shown by its decision

3  not to depose Ms. Bryan before opposing Millennium's motion for summary

4  judgment that it does not need Ms. Bryan's testimony to further develop the key

5  facts of this case.

6      On Ms. Bryan's side of the scale, and as set forth in her Declaration, the

7  burden on her to prepare and sit for a third day of deposition is extreme. Ms.

8  Bryan is presently managing two enormous personal challenges. First, her father

9  recently passed away and she is essentially managing the entirety of her widowed

10 mother's financial affairs. Bryan Decl. at ¶ 9. To better care for her mother who

11 resides, alone, in Florida, Ms. Bryan is actively searching for an apartment for her

12 in the San Diego area. *Id.* at ¶ 10. Simultaneously, her brother who lives in

13 Oregon was recently diagnosed with gastric cancer and is in chemotherapy. *Id.* at

14 ¶ 12. Because she is the closest family member to her brother, Ms. Bryan is "on-

15 call" should the need arise for her to travel to see him. *Id.* To say that Ms. Bryan

16 will have difficulty focusing on the clearly duplicative litigation efforts of

17 Ameritox is a gross understatement. And this is to say nothing of the fact that

18 Ameritox proposes to ask Ms. Bryan about matters that occurred over three years

19 *after* she separated from Millennium.

20      Even while she has had to address the foregoing significant personal

21 challenges, Ms. Bryan has very recently secured a position as Chief Marketing

22 Officer for Boost Academy, Inc., after nine months of unemployment. Boost, a

23 San Diego-based start-up that provides math tutoring to children through a

24 proprietary app, is expanding rapidly, and requires as much attention as Ms. Bryan

25 can provide to help the company to survive and stay ahead of a dynamic market-

26 shifting environment. Bryan Decl. at ¶ 12-13. Ms. Bryan routinely works 13

27 hours per day to help make Boost a success. *Id.* at ¶ 13. The time, effort, and

28 distraction necessary for Ms. Bryan to prepare on her own for a third deposition,

1   prepare with undersigned counsel, sit for a third deposition, review her transcript,

2   and potentially be available if Ameritox decides to simply "suspend" her

3   deposition or if it receives "new" emails again, would place a grossly undue

4   burden on her current employment. *See id.* at ¶ 14.  Ms. Bryan supports herself,

5   and jeopardizing the single source of income she now obtains after nine months of

6   unemployment would be terribly unfair. *Id.*

7        Weighing Ameritox's claimed need for Ms. Bryan's third day of testimony

8   against the enormous burden upon her, the court should exercise its discretion to

9   quash the subpoena as untimely, cumulative, duplicative, and burdensome. *See*

10  *Rankine v. Roller Bearing Co. of Am.*, No. 12CV2065-IEG BLM, 2013 WL

11  3992963, at *3 (S.D. Cal. Aug. 5, 2013) ("Where discovery is requested from non-

12  parties, more stringent restrictions should be enforced."); *Amini Innovation Corp.*

13  *v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406 (C.D. Cal. 2014)

14  ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to

15  special weight in evaluating the balance of competing needs" in a Rule 45 inquiry)

16  (citation omitted).[9]

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26

_____

[9]   The Wisconsin Court's experience with Ameritox's overbroad and
27   unreasonable discovery conduct is certainly not lost on Ms. Bryan. *See, e.g.*,
     Dkt. No. 179 ("Text Order" noting Ameritox's "palpable overreaching" with
28   respect to discovery) (Gelhaar Decl., Ex. B).

## CONCLUSION

For all of the foregoing reasons, Ms. Bryan respectfully requests that the Court quash the Subpoena served upon her in *Ameritox v. Millennium*, 3:13-cv-00832-WMC, currently pending in the United States District Court for the Western District of Wisconsin.

Dated:  December 11, 2014          Respectfully submitted,

By: _____
John J. Rice
ricej@ballardspahr.com
Ballard Spahr LLP

and

Peter E. Gelhaar (*pro hac vice pending*)
peg@dcglaw.com
Brendan St. Amant (*pro hac vice pending*)
bts@dcglaw.com
Donnelly, Conroy & Gelhaar, LLP

Attorneys for Plaintiff
Millennium Health, LLC

DMWEST #11557896 v1
NON-PARTY BRYAN'S MEMO. ISO HER MOTION TO QUASH DEPOSITION SUBPOENA

1  John J. Rice (SBN 140865)
   BALLARD SPAHR LLP
2  655 West Broadway, Suite 1600
   San Diego, California 92101-8494
3  Tel.:  (619) 696-9200
   Fax:  (619) 696-9269
4  Email:  ricej@ballardspahr.com

5  Peter E. Gelhaar (*pro hac vice pending*)
   Brendan St. Amant (*pro hac vice pending*)
6  DONNELLY, CONROY & GELHAAR, LLP
   260 Franklin Street, Suite 1600
7  Boston, MA 02110
   Tel.:  (617) 720-2880
8  Fax:  (617) 720-3554
   Email:  peg@dcglaw.com
9          bts@dcglaw.com



SEALED

10 Attorneys for Plaintiff Millennium Health, LLC

11                **UNITED STATES DISTRICT COURT**

12                **SOUTHERN DISTRICT OF CALIFORNIA**

13

14 AMERITOX, LTD. and MARSHFIELD          | Case No. **14 CV 2928 WQH WVG**
   CLINIC,
15                                         | **[FILED UNDER SEAL]**
                Plaintiffs,
16                                         | **DECLARATION OF RENEE T.**
        v.                                 | **BRYAN**
17
   MILLENNIUM HEALTH, LLC,                 | Pending in the
18                                         | United States District Court
                Defendant.                 | Western District of Wisconsin
19                                         | Case No. 3:13-cv-00832-WMC

20

21

22

23

24

25

26

27

28

---
DMWEST #11556695 v1

                              DECLARATION OF RENEE T. BRYAN

1    I, RENEE T. BRYAN, on oath, do hereby declare and state as follows:

2    1.    I am over the age of 18 years old and make this Declaration in support
3    of my Motion To Quash Deposition Subpoena. I am not a party to the above-
4    referenced patent infringement action. The facts set forth in this Declaration are
5    based upon my personal knowledge. If called upon as a witness, I could and would
6    testify to these facts.

7    2.    I have been a resident of San Diego, California, for six years and have
8    worked in the field of marketing for over 20 years. I have a Bachelor of Science in
9    Marketing and Business Administration from the University of Richmond, and a
10   Masters in Business Administration from Case Western Reserve University.

11   3.    From March 2009 to July 20, 2011, I was employed by Millennium
12   Laboratories, LLC ("Millennium") as Vice President of Marketing & Strategic
13   Planning. During that time, I helped to grow the marketing and public relations
14   aspects of the business. I am not a scientist nor do I hold a Ph.D.

15   4.    Since separating from Millennium on July 20, 2011, I have had no
16   role at Millennium. Moreover, I own no stock or any other financial interest in
17   Millennium whatsoever.

18   5.    I am generally familiar with the ongoing series of litigation between
19   my former employer, Millennium and Ameritox, Ltd ("Ameritox").

20   6.    On May 26, 2011, I sat for a full-day deposition in the matter of
21   *Millennium Laboratories, Inc. v. Ameritox, Ltd.*, C.A. No. 10-cv-3327 (D. Md.).

22   7.    On November 9, 2011, I sat for an additional deposition in the above
23   matter. Counsel for Ameritox questioned me repeatedly about the design,
24   development, and commercial launch of Millennium's RADAR Reports. I
25   understand that these issues are the focus of the current patent infringement case in
26   Wisconsin. I believe that I provided everything I knew about the RADAR Report
27   in this prior deposition.

28   ///

---

DECLARATION OF RENEE T. BRYAN

8.    I have not been employed at Millennium since July 2011, nearly 3.5 years since the June 2011 "launch" of the RADAR Report and my memory of the events in question are necessarily not as sharp as when I was deposed in November 2011. I have worked for three companies since my time at Millennium, and I think it is fair to say that I do not recall all but the most general information from my time at Millennium, and very little having to do with the RADAR Report.

9.    In August 2014, my father passed away, which left my 79 year-old mother widowed, living by herself in Florida. My father took care of all of the finances for my mother, and consequently she does not understand how to handle financial matters. Since my father's passing, I have had to be in constant contact with estate attorneys, accountants, and financial advisors to help migrate pensions and trusts, facilitate tax preparation, modify Social Security distributions, and even obtain a new credit card for my mother. I have traveled to Florida from mid-August to early September to help her begin this process, and I estimate that I am in telephonic contact with her at least twice a week for more than an hour at a time, and I spend roughly five hours per week attending to the affairs I have outlined above.

10.    My navigation of my mother's issues have been compounded by the fact that she is not technologically literate, and does not have the ability to scan documents. As she is in the midst of receiving a steady stream of financial and government communications regarding her life transition, it is difficult for her to convey the substance and materiality of what she is receiving so that I may make reasoned decisions for her. I am currently searching for an apartment for her to live in San Diego for several months per year so that I may better attend to her needs and manage her affairs.

11.    My brother, who is unemployed and lives alone in Portland, Oregon, was recently diagnosed with gastric cancer and is in chemotherapy, fighting for his

///

DECLARATION OF RENEE T. BRYAN

1 life. I am his closest family member and, thus, I am "on-call" should the need arise
2 for me to travel to take care of him.

3     12.    I am the head of a one-person household. I recently secured a position
4 as Chief Marketing Officer for Boost Academy, Inc. ("Boost"), a start-up, after
5 nine months of unemployment. Boost provides math tutoring to children through a
6 proprietary app.

7     13.    Boost is expanding rapidly, and requires my marketing skills and
8 dedication to help the company (and my employment) survive and stay ahead of a
9 dynamic market-shifting environment. Boost currently has only three full-time
10 employees and has just gone "live" this past August. Because of my substantial
11 start-up background, Boost requires my skill-set in many different facets of the
12 company. For example, I am currently instrumental in raising a round of capital
13 financing while commercializing the company's current services. I routinely work
14 13 hours per day each weekday for Boost, and work various hours on the weekend
15 as well to help the company become successful.

16     14.    The time and distraction necessary for me to prepare with my attorney
17 for a third deposition, spend a day in the deposition, review my transcript, and
18 potentially be available if Ameritox decides to recall me for whatever reason,
19 would jeopardize my single source of income, be an undue burden on my
20 employment, and further complicate my substantial familial obligations.

21     I declare under penalty of perjury under the law of the United States that the
22 foregoing is true and correct.

23     Executed this 11th day of December, 2014, in San Diego, California.

24

25     By: _Renee T Bryan_
          Renee T. Bryan

26

27

28

        DECLARATION OF RENEE T. BRYAN

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

14 CV 2928 WQH WVG

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ❏ 1  U.S. Government Plaintiff | ❏ 3  Federal Question *(U.S. Government Not a Party)* |
| ❏ 2  U.S. Government Defendant | ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 400 State Reapportionment |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ | | | ❏ 410 Antitrust |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ❏ 430 Banks and Banking |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | Product Liability | | ❏ 820 Copyrights | ❏ 450 Commerce |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 368 Asbestos Personal Injury Product Liability | | ☒ 830 Patent ✓ | ❏ 460 Deportation |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 710 Fair Labor Standards Act | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 160 Stockholders' Suits | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 720 Labor/Management Relations | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 190 Other Contract | ❏ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 740 Railway Labor Act | ❏ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ❏ 195 Contract Product Liability | | | ❏ 751 Family and Medical Leave Act | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| ❏ 196 Franchise | | | ❏ 790 Other Labor Litigation | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ❏ 895 Freedom of Information Act |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | | ❏ 950 Constitutionality of State Statutes |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** ❏ 540 Mandamus & Other | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 550 Civil Rights | ❏ 465 Other Immigration Actions | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ❏ 1 Original Proceeding | ❏ 2 Removed from State Court | ❏ 3 Remanded from Appellate Court | ❏ 4 Reinstated or Reopened | ❏ 5 Transferred from Another District *(specify)* | ☒ 6 Multidistrict Litigation |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:  Rule 45 D3

Brief description of cause:  Rule 45 D-3  Quash Subpoena

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  ❏ Yes  ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*  JUDGE  Conley  DOCKET NUMBER  3:13-CV-00833 w-mc-w-D-w-I

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # 68685  AMOUNT $400  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

MR  12/11/14

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS068685
Cashier ID: mbain
Transaction Date: 12/11/2014
Payer Name: SEALED V SEALED
----------------------------------
CIVIL FILING FEE
 For: SEALED V SEALED
 Case/Party: D-CAS-3-14-CV-002928-001
 Amount:        $400.00
----------------------------------
CHECK
 Check/Money Order Num: 41921
 Amt Tendered:  $400.00
----------------------------------
Total Due:       $400.00
Total Tendered: $400.00
Change Amt:       $0.00


There will be a fee of $53.00
charged for any returned check.
```